## CIRCUIT COURT OF WESTMORELAND COUNTY

Jingli Hu

 v.

CorpServe, Inc.,
Substitute Trustee,
and Premier Bank

Case No. CL12-40

By Judge Harry T. Taliaferro, III

June 12, 2012

The plaintiff Jingli Hu ("Ms. Hu") seeks in her Complaint to set aside an agreement to purchase real estate that she bought at a foreclosure sale conducted by the defendant CorpServe, Inc., Substitute Trustee ("CorpServe") and to obtain a refund of her bidder's deposit. The defendants CorpServe and Premier Bank, the successor-in-interest beneficiary and secured party under the applicable Deed of Trust, demurred to the Complaint. The Court has considered the allegations in the Complaint, the written Demurrer of defendants, the plaintiff's written Reply to the Demurrer, the statutory and case law cited to the Court, and the oral arguments of counsel heard on April 20, 2012. This letter renders the Court's opinion on the Demurrer.

### Factual Allegations in the Complaint

The Complaint alleges as follows. CorpServe was appointed by Premier Bank to serve as substitute trustee under a recorded Deed of Trust to foreclose on property known as Coles Point Marina and Campground

located in Westmoreland County, Virginia. CorpServe advertised the Trustee's sale four times in the *Richmond Times Dispatch*. Pursuant to the ad the Trustee's sale took place on November 17, 2011. Ms. Hu was the successful high bidder. As such, she paid CorpServe a $275,000 deposit. She and CorpServe entered into a Memorandum or Agreement of Sale, Exhibit 1 to the Complaint, consisting of Notice of Trustee's Sale and Additional Terms and Conditions (hereafter "the Memo" or "the Contract"). Near the end of the Memo, between the last two printed paragraphs, is the following handwritten interlineation: "5% buyer's Premium." At the bottom of the Memo is the following notation:

Bid Amount: $2,650,000
Buyer Prem. $132,500
 ‾‾‾‾‾‾‾‾‾‾
 $2,782,500

The words "Bid Amount:" are printed, this rest of the above notation is handwritten. As set out in the Memo, the "TERMS OF SALE" include the following: "settlement within 45 days of sale, time being of the essence" and "a bidder's deposit of $275,000 by certified or cashier's check payable to the Trustee shall be required at the commencement of the sale." Ms. Hu was not able to settle within 45 days and was unable to obtain an extension.

The last typed paragraph of the Memo states: "THE UNDERSIGNED, BEING THE SUCCESSFUL BIDDER AND IS BOUND BY THE TERMS AND CONDITIONS IN THE ADVERTISEMENT AND ADDITIONAL CONDITIONS CONTAINED HEREIN."

### Standard for a Demurrer

Upon consideration of a demurrer, the Court accepts all facts alleged in or reasonably inferable from the plaintiff's pleading to be true. The Court does not evaluate and decide the merits of a claim; it only tests the sufficiency of factual allegations to determine whether the plaintiff's pleadings state a cause of action. *West Alexandria Properties, Inc. v. First Va. Mtg. & Real Estate Inv. Trust*, 221 Va. 134, 267 S.E.2d 149 (1980); *Board of Supvrs. v. Southland Corp.*, 224 Va. 514, 297 S.E.2d 718 (1982). The documents attached to the Bill of Complaint as exhibits are part of plaintiff's pleadings to be considered in the motion before the Court. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22 (1993). See also Rule 1:4(i). The Court may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings. *Ward's Equipment v. New Holland North Am.*, 254 Va. 379 (1997). Allegations stating conclusions of law or inferences drawn from conclusions of law are not taken as admitted by a demurrer. *Motors Ins. Co. v. United States Fire Ins. Co.*, 208 Va. 684 (1968).

*Claims in Counts I, II, and III*
*Grounds of Demurrer*

The Complaint contains three counts. Each count alleges the Memo to be void because it violates Virginia Code § 55-59.4.

Count I alleges as follows. Va. Code § 55-59.4(A)(2) creates a statutory or fiduciary duty owed by the Trustee to the high bidder. It limits the maximum bidder's deposit to "ten per centum of the sales price," unless the deed of trust specifies a higher figure. Paragraph 21 of the Deed of Trust states that "bidder's deposit of not more than 10% may be required." The purpose of the statute is to curb fraud and protect members of the public such as Ms. Hu. Count I concludes that charging Ms. Hu a deposit of more than 10% of her $2,650,000 bid rendered the Contract void.

In Count II, the following allegations are made. Nothing in Va. Code § 55-59.4, the Deed of Trust, the Notice of Trustee's Sale advertised in the newspaper, or in the Memo authorizes or allows adding a 5% buyer's premium. The Deed of Trust and published advertisement are not made exhibits to the complaint and, therefore, the documents themselves are not before the Court on this Demurrer. The statute and documents thus effectively prohibit charging such a premium. The added premium makes the cost of the trustee's services exceed a "reasonable commission." Count II concludes that charging a buyer's premium violates the statute's public policy to curb fraud and protect the public and renders the Contract void.

Count III alleges as follows. Va. Code § 55-59.4(A)(2) requires a forfeited bidder's deposit to be applied to payment of the cost and expense of sale with the balance, if any, to go to the Trustee as his compensation in connection with the sale. The Memo requires that the balance of the forfeited deposit go to pay "the balance due under the Note." Count III concludes that this violates the statute and renders the Contract void.

The defendants demur to the three counts in the Complaint on the grounds that (1) Va. Code § 55-59.4 does not afford a private cause of action to a defaulting buyer, (2) the deposit paid by Ms. Hu was less than 10% of the sales price because her total bid included the 5% buyer's premium, (3) there is no prohibition on charging a buyer's premium, and (4) Ms. Hu lacks standing to challenge the application of the defaulted deposit to the debt rather than Trustee's expenses and because such application did not cause her harm.

*Analysis*

Ms. Hu by her own allegations admits she defaulted under the Memo because, time being of the essence, she did not settle within 45 days of sale nor did she allege any exception under the Memo relieving her of such requirement. Nevertheless, the plaintiff asserts violations of provisions of Va. Code § 55-59.4 as grounds for voiding the Contract she signed and

for receiving a refund of her deposit. Va. Code §§ 55-59 through 55-59.4 extensively address the Virginia scheme of non-judicial foreclosure under a deed of trust. The statutes cover such topics as how a deed of trust is construed, the rights and duties of the parties, required notices before sale, advertisements by the trustee, contents of advertisements, and the powers and duties of a trustee in the event of a trustee's sale. A trustee in a deed of trust is authorized to act with reference to the trust property only in the manner which the deed, either by express terms or by necessary implication, provides. *First Funding Corp. v. Birge*, 220 Va. 325, 257 S.E.2d 861 (1979) (trustees of purchase money deed of trust exceeded the scope of their express authority by subordinating the lien of their trust). The purpose of the statutes generally and historically has been to prescribe the duties and regulate the conduct of the trustee only so far as the deed fails to do so. *See Clark v. Moore*, 76 Va. 262 (1882).

The premise of the claim in Count I of the Complaint is that CorpServe, pursuant to § 55-59.4(A)(2), owes a statutory or fiduciary duty to Ms. Hu as the bidder at sale. The trustee does owe fiduciary obligations to both the creditor and debtor in executing the powers granted him under a deed of trust. *Smith v. Credico Indus. Loan Co.*, 234 Va. 514 (1987). While a trustee executing a deed of trust has such recognized duties to both creditor and debtor, at the sale, he occupies the technical position of the seller. *Yaffe v. Heritage Savings & Loan*, 235 Va. 577 (1988). Bidders are not parties to the deed of trust. A successful bidder becomes a voluntary party to a contract with the trustee as the seller of real estate when the highest bid is accepted and the sale completed. The auctioneer, or, if none, the trustee, may for a brief time after the conclusion of the suit act as agent of the buyer and his writing down of the buyer's name and the amount of the bid is sufficient to take the contract out of the Statute of Frauds. *Holston v. Pennington*, 225 Va. 551, 558 (1983). The Trustee is not otherwise under the Statute the agent of the buyer.

Count I asserts the purpose of § 55-59.4(A)(2) is to curb fraud and generally protect the public. Ms. Hu cites *Lasting Products Co. v. Genovese*, 197 Va. 1 (1955), as authority supporting her argument that the Memo she signed is illegal and unenforceable as a violation of a public policy enacted to protect the public against fraud or imposition. In *Genovese*, a paint manufacturer which sold and delivered its paint to a customer in Virginia was barred from recovering the balance due on the contract purchase price because it failed to label the paint's ingredients as required by state. The applicable Virginia Paint Law declared its purpose to be "to prevent deception in the sale of paint and to require true labels and labeling for the same" (former Va. Code § 59-61.1). Ms. Hu reasons that, like the Statute in *Genovese*, the design of § 55-59.4 in limiting a bidder's deposit to 10% is to protect bidders like herself from fraud. The Virginia Supreme Court has said, however, that the requirement of a deposit at a foreclosure "is solely

for the trustee's protection." *Yaffe*, 235 Va. at 581. The trustee requires a deposit from the purchaser at sale to protect the parties to the deed of trust to whom he owes a fiduciary duty from the adverse consequences of default by the successful bidder. The relationship between the bidder and trustee arises from the agreement memorialized by the Memo. The Court finds the relationship between the trustee and bidder is contractual in character rather than fiduciary.

Count II claims that the Memo is void because the trustee had no authority to impose a "5% buyer's premium" on top of Ms. Hu's high bid after the sale. Ms. Hu alleges "the sale price" was her high bid of $2,650,000. CorpServe could not, she asserts, afterward interlineate a 5% buyer's premium, add $132,500 to make her bid come up to $2,782,500 and require that she pay a bidder's deposit of $275,000. Quite obviously, whether this deposit exceeded 10% of the sales price depends upon whether the sales price excluded or included the buyer's premium.

Trustees do have discretion in the manner of conducting the sale. On page 1 of the Memo, it is stated "Procedures and terms of sale shall be subject to trustees discretion, shall be announced prior to sale, and shall control." Also, in the next to last paragraph in the Memo, CorpServe expressly reserved the right to "amend or supplement the terms of sale by verbal announcements prior to or during the sale." It seems reasonably inferred from the allegations and thus taken as true that no buyer's premium announcement was made at the sale, but rather the premium was sprung on Ms. Hu after the property was knocked out to her.

The Court is unable to find any Virginia authority on buyer's premiums at foreclosure sales. Without factual evidence, the way in which the buyer's premium is to be applied in the sale is not known to the Court. If for example, the buyer's premium is intended to cover payment of the auctioneer's fee; it may be allowable if reasonably necessary in connection with the sale of the property. If there were a prior announcement by a trustee that 5% was to be added to bids made at auction, the bidders would be on fair notice that, for example, a bid of $100 would require payment of $105. This scheme seems disingenuous since bidders would adjust their bids downward according to the percent of premium. But this would not amount to fraud or imposition on a bidder.

The material issue framed in Count III is not so much about whether the bidder's deposit was more or less than 10% of the sales price, depending on whether a 5% premium is or is not included therein, but rather whether the Memo changing how the deposit was to be applied upon default by the bidder resulted in additional liability to Ms. Hu that she would not have had if such funds had been applied pursuant to the language in § 55-59.4. The statute provides that the net balance is to be retained by the trustee as compensation in connection with that sale. The Memo changes this application by redirecting the net balance to payment on the secured note. While the Memo

limits Ms. Hu's remedy to refund of her deposit, it allows CorpServe plenary rights or remedies of recovery when the deposit is forfeited. This redirection of payment contrary to the provision of § 55-59.4 may mean that CorpServe could pursue a claim against Ms. Hu which it might not have had if the net balance had gone directly to the trustee as compensation.

Finally, Ms. Hu argued in her Reply to Demurrer that, although CorpServe was a Virginia corporation, it is nevertheless without authority under Va. Code § 55-58.1 to act as a trustee under a deed of trust in Virginia because its principal office is not located within the Commonwealth of Virginia. The Court declined to consider this point on oral argument because it was not raised in the Complaint and because the Court could not consider documents only attached as exhibits to Ms. Hu's Reply, not to the Complaint.

### Summary

Upon consideration of the foregoing, the Court for the reasons stated herein:

(1) Sustains the Demurrer to Count I upon the finding that there is no fiduciary duty owed by CorpServe to Ms. Hu pursuant to Va. Code § 55-59.4(A)(2), nor does such statute embody as public policy the goal of protecting bidders from trustee fraud;

(2) Overrules the Demurrer to Count II upon the finding that, while there is no *per se* prohibition to a buyer's premium, the Memo may be shown to be void because the trustee exceeded its legal authority at the sale by imposing an unannounced 5% surcharge in the form of a buyer's premium on the sales price or that the premium was charged for something not reasonably connected with the trustee's sale;

(3) Sustains the Demurrer to Count III; however, Ms. Hu is given leave to file an Amended Count III specifying imposition of liability on her relating to the redirection of payment of the net balance of her deposit as provided in the Memo;

(4) Ms. Hu may file a motion for leave to amend her Complaint to allege in an additional count that CorpServe had no authority under the law of Virginia to act as a corporate trustee under the deed of trust pursuant to which foreclosure was conducted as alleged in this case.

Upon entry of an Order reflecting the decision of the Court in this letter, the plaintiff Ms. Hu shall have twenty-one days from the date of the entry of such Order to file such amended pleadings as she may be advised. Defendants shall have twenty-one days from the date of receiving plaintiff's amended pleadings to file such responsive pleadings as may be advised.

456

This suit arises from the foreclosure of property known as Coles Point Plantation, a marina campground located in Westmoreland County, Virginia ("the Property").

## Prior Proceedings

The plaintiff Jingli Hu filed a Complaint against the defendants CorpServe, Inc., Substitute Trustee, and Premier Bank ("Premier"). The defendants filed a Demurrer to the Complaint. The Court ruled upon the Demurrer in an opinion letter dated June 12, 2012. Pursuant thereto, the Court entered an Order on July 19, 2012, sustaining the Demurrer to Count I, overruling the Demurrer to Count II, sustaining the Demurrer to Count III with leave to amend, and granting leave to plaintiff to file an additional count alleging that CorpServe had no authority under the law of Virginia to act as a corporate trustee under the Deed of Trust pursuant to which foreclosure was conducted as alleged in this case.

Pursuant to the leave granted, the plaintiff filed a four count Amended Complaint, to which the defendants filed a Demurrer. Plaintiff filed a Reply to Demurrer to the Amended Complaint. The Court heard argument on October 3, 2012. The plaintiff also filed against defendants a Motion to Determine the Sufficiency of Objection and to Deem as Admitted Certain Requests for Admission. The Court heard this Motion on October 25, 2012, and overruled defendants' objections to plaintiff's request for admissions and ordered that the same be answered within ten days.

## Allegations in the Amended Complaint

Premier is the successor in interest of the Adams National Bank and is the lender and secured party under a certain Second Amended and Restated Deed of Trust dated July 28, 2003, recorded in the Clerk's Office of the Circuit Court of Westmoreland County, Virginia, in Deed Book 610, Page 679 ("Deed of Trust"). By Deed of Appointment dated August 23, 2008, recorded in Deed Book 792, Page 1159, the Adams National Bank appointed CorpServe to serve as substitute trustee of the Deed of Trust in the place of Cindi E. Cohen. The Deed of Appointment invested CorpServe with full power and duties of a Trustee in accordance with the terms of the Deed of Trust and the laws of Virginia. At the time of its appointment and at all times relevant in this case, CorpServe, as shown by annual reports it filed with the Virginia State Corporation Commission ("SCC"), maintained its principal office in Bethesda, Maryland 20814, not within the Commonwealth of Virginia. The Deed of Appointment directed that notices to the Trustee required under the Deed of Trust be sent to the address of a law firm in Bethesda, Maryland 20814.

There was a default in the payment of the Note secured by the Deed of Trust. Premier directed CorpServe to foreclose on the Property under the Deed of Trust. Premier, the assignee lender, knew or should have known that CorpServe did not have its principal office in the Commonwealth of Virginia. CorpServe, as substitute trustee, caused advertisement of foreclosure to be published in the *Richmond Times Dispatch* and sold the Property at public auction on November 17, 2011. Ms. Hu, as the successful bidder, entered into a Memorandum of Sale (the "Memo") with CorpServe signed by its President Joel Aronson.

## Relief Sought in Amended Complaint

Ms. Hu seeks in this case to set aside the Memo by which she bought the Property at the trustee sale and obtain a refund of her bidder's deposit. Her claim is that because CorpServe did not have its principal office in the Commonwealth of Virginia as required by Va. Code § 55-58.1 the actions it took as a corporate Trustee in foreclosure were void and of no effect.

Va. Code § 55-58.1 states in applicable part:

> (2) No person not a resident of this Commonwealth may be named or act, in person or by agent or attorney, as the trustee of a security trust, either individually or as one of several trustees, the other or others of which are residents of this Commonwealth. No corporation may be named or act as the trustee or as one of the trustees of a security trust unless it is chartered under the laws of this Commonwealth or of the United States of America, and unless its principal office is within this Commonwealth.

In her four Count Amended Complaint, Ms. Hu seeks the following relief: in Count I, to have the Memo declared void and unenforceable because of violation of § 55-58.1(2); in Count II, to have the Memorandum declared void because CorpServe lacked capacity to convey the Property within the term of performance in the Memo; in Count III (shown as Count II in the Complaint), to void the Memo because CorpServe charged a buyer's premium not allowed by § 55-59.4; and, in Count IV (amended from Count III in Complaint), to void the Memo because it provided for forfeiture of the bidder's deposit in a manner unauthorized and contrary to § 55-59.4(A)(2).

## Standard for a Demurrer

Upon consideration of a demurrer, the Court accepts all facts alleged in or reasonably inferable from the plaintiff's pleading to be true. The Court does not evaluate and decide the merits of a claim, it only tests the sufficiency of factual allegations to determine whether the plaintiff's pleadings state a

cause of action. *West Alexandria Properties, Inc. v. First Va. Mtg. & Real Estate Inv. Trust,* 221 Va. 134, 267 S.E.2d 149 (1980); *Board of Supvrs. v. Southland Corp.,* 224 Va. 514, 297 S.E.2d 718 (1982). The documents attached to the Bill of Complaint as exhibits are part of plaintiff's pleadings to be considered in the motion before the Court. *CaterCorp, Inc. v. Catering Concepts, Inc.,* 246 Va. 22, 431 S.E.2d 277 (1993); see also Rule 1:4(i). The Court may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings. *Ward's Equipment v. New Holland North Am.,* 254 Va. 379, 493 S.E.2d 516 (1997). Allegations stating conclusions of law or inferences drawn from conclusions of law are not taken as admitted by a demurrer. *Motors Ins. Co. v. United States Fire Ins. Co.,* 208 Va. 684, 160 S.E.2d 754 (1968).

### The Demurrer to Amended Complaint

CorpServe and Premier demur to Count I of the Amended Complaint on the grounds that: (a) CorpServe having its principal place of business outside Virginia is not grounds for setting aside the sale, (b) § 55-58.1 does not create a private cause of action in favor of a defaulting buyer, (c) the Virginia Stock Corporation Act bars the claim, and (d) § 55-58.1(3) bars the claim; to Count II on the grounds (a) set forth in its Demurrer to Count I and (b) that the claim of CorpServe's lack of capacity to act goes beyond the Court's leave to amend Count I in the original Complaint; in Count III on the grounds that plaintiff did not allege there was no public announcement at auction of a 5% buyer's premium or that the 5% buyer's premium was not reasonably connected to the sale; and to Count IV on the grounds that Ms. Hu lacks standing to complain about application of the forfeited deposit.

### Analysis

#### A. *Demurrer to Count I (Grounds (a) through (d))*

##### (1) *CorpServe having its principal place of business outside Virginia is not grounds for setting aside the sale*

The defendants' first ground of demurrer to Count I is that CorpServe's having its principal place of business outside Virginia is not grounds for setting aside the foreclosure. In support of this ground for its Demurrer, CorpServe argues policy. It contends that, even without having its principal place of business in the Commonwealth, the foreclosure sale it conducted should not be set aside because foreclosures in Virginia and CorpServe itself are subject to this state's close oversight and discipline. The argument made is that CorpServe is a Virginia SCC chartered corporation that is required as trustee to file a report of foreclosure with the Commissioner of Accounts

of this Court. It is also argued that, because Aronson is a licensed attorney in Virginia, he may be disciplined by the Virginia State Bar. None of these arguments are sufficient to answer the statutory requirement in § 55-58.1(2) that CorpServe, to be named or act as Trustee, must have its principal office within the Commonwealth.

Premier and CorpServe argue that not every issue arising from foreclosure sales render the sale voidable or void, citing *Deep v. Rose*, 234 Va. 631, 364 S.E.2d 228 (1988). There the Supreme Court noted that language in § 55-59.1 specifically provides that defects in trustee notices of foreclosure do not affect the validity of a foreclosure sale while its sister statute § 55-59.2 contains no such savings language for defects in required trustee advertisements of foreclosure. Reading the two statutes together, the Supreme Court discerned that the General Assembly intended different consequences for a violation of the respective sections and concluded that a violation of the mandatory advertising requirement in § 55-59.2 rendered a foreclosure void. In so ruling, the Court noted the limited nature of its holding: "our holding is limited to the effect of Va. Code § 55-59.2 and does not apply to its relatively permissive statutory predecessors, to other statutes relating to foreclosure sales, or to violations of the terms contained in the deeds of trust concerning advertisement and sale." *Id.* 234 Va. at 638.

In response to *Deep v. Rose*, the General Assembly amended § 55-59.2 by adding subsection E which states: "failure to comply with the requirements of advertisement contained in this section shall, upon petition, render a sale of the property voidable by the Court." Thereafter, *Virginia Housing Dev. Auth. v. Fox Run, Ltd. Partnership*, 255 Va. 356, 497 S.E.2d 747 (1998), held that claimed inadequacies in giving notice about the sale of personal property in an advertisement of foreclosure sale did not under § 55-59.3 render its sale at foreclosure invalid. The Court noted that in contrast to the mandatory advertising requirements in § 55-59.2, "in other matters concerning advertisement of foreclosure sales under deeds of trust, we have held that substantial compliance is sufficient so long as the rights of the parties are not affected in any material way." *Id.* 255 Va. at 367.

In determining whether the violation of a statutory requirement may void a foreclosure sale, case decisions follow the sense of the language in the statute and the relative importance of the statutory requirement to the integrity of a foreclosure sale. Since people only go to foreclosure sales if they know about them, the requirement of following the mandatory requirements for publication of advertisements in § 55-59.2 is of paramount importance and the failure to comply with such requirements can void a sale. Other statutory requirements for foreclosure when violated, having a lesser effect, may only render a sale voidable if inequity can be shown or may require only substantial rather than exact compliance.

The case most paralleling the facts before this Court is *In re Trustee's Sale of the Property of Willie Brown*, 67 Va. Cir. 204 (Norfolk 2005). It

addressed exceptions to the Report of the Circuit Court's Commissioner of Accounts who found a foreclosure "null and void *ab initio*" because one of the two corporate substitute trustees involved in the foreclosure was not a Virginia corporation and did not maintain its principal office within the Commonwealth. The Court opined that it was clear under Va. Code § 55-58.1(2) that the non-qualified non-Virginia corporate substitute trustee could not be named or act as a trustee in the foreclosure in issue. The Circuit Court nevertheless overruled the Commissioner and sustained the exception finding the foreclosure to be valid because the second substitute trustee was a qualified Virginia corporation under § 55-58.1(2) and had performed all the operative acts of the foreclosure by conducting the sale, executing the deeds, signing and filing accounts, and carrying out all necessary foreclosure sale activities and because no party suffered an inequity by the qualified substitute trustee's performing the foreclosure. This ruling went no further in considering qualification of trustees under the statute.

The Court has not been directed to any authority directly on the point of whether a corporate trustee having its principal office outside Virginia renders a foreclosure by such trustee acting alone void or voidable or whether the trustee's just being a Virginia corporation without its principal office in the Commonwealth of Virginia constitutes substantial compliance. The wording in subpart (2) of § 55-58.1 is about as mandatory as one could make it. It provides: "No corporation may be named or act as the trustee . . . of a security trust unless its principal office is within this Commonwealth." Subpart (1) of § 55-58.1 defines "security trust [to] include a deed of trust, mortgage, bond or other instrument . . . under which the title to real and personal property . . . is conveyed, transferred, encumbered, or pledged to secure the payment of money." In Virginia, placing a deed of trust on property is a conveyance, and the legal title of the property conveyed is vested in the trustee. *American Small Business Investment Co. v. Frenzel, Trustee*, 238 Va. 453, 457, 383 S.E.2d 731 (1989), citing *Larchmont Homes, Inc. v. Annandale Water Co.*, 201 Va. 178, 183, 110 S.E.2d 249 (1959). The two requirements in subpart (2) of § 55-58.1 for a corporation serving as a trustee cannot be read as optional, and the Court has not found a savings clause that would change the apparent mandatory nature of this section.

CorpServe argues its failure to have its principal office in the Commonwealth did not adversely affect the conduct of the sale that was heavily advertised and which resulted in active bidding and a substantial price being obtained for the Property. It points out that the sole result of holding the foreclosure sale void or upsetting the sale as voidable would be to repeat the same sale with no assurance that a second sale conducted by a qualified trustee would produce a better or fairer outcome for either the creditor or debtor. Additionally, it contends that, even if not having a principal office within the Commonwealth militates against "substantial

compliance," there are strong equities that oppose declaring the sale void and of no force or effect.

Ms. Hu counters that no authority supports that Aronson's being President of CorpServe and a member of the Virginia State Bar obviates the requirement of CorpServe's having its principal office in Virginia. Further, she contends that, because Aronson has admitted he is not a resident of Virginia, he cannot himself be named or act as a Trustee of a Virginia deed of trust. She also argues that there is no second qualified substitute trustee to serve with CorpServe, as in *Brown*; that there is no language in § 55-58.1 that would specifically make the sale voidable, not void, similar to § 55-59.2(E); that "substantial compliance" by CorpServe cannot be shown; and that CorpServe's failure to have its principal office within Virginia is not a mere technicality.

This ground of Demurrer is overruled. The Court finds that the actions of the defendants render the trustee auction and the Memo executed pursuant thereto voidable.

### (2) *Section 55-58.1 does not create a private cause of action in favor of a defaulting buyer*

The defendants' second ground of Demurrer to Count I is that § 55-58.1 does not create a private cause of action in favor of a defaulting buyer. This ground of Demurrer is overruled. Ms. Hu does allege that CorpServe violated § 55-58.1(2), but her cause of action in Count I is for common law breach of contract. She alleges that CorpServe violated the law when, acting as Trustee, it signed the Memo thereby rendering the Memo an illegal contract that was void and of no effect. Count I is a common law action on a contract. The Memo provides, "[i]n the event of a default by the substitute trustee, the successful bidder's sole remedy shall be the refund of the deposit." This is precisely the relief Ms. Hu requests in ¶ 23 of her Amended Complaint.

### (3) *The Virginia Stock Corporation Act bars the claim*

The defendants' third ground of Demurrer to Count I is that the plaintiff's claim is barred by the Virginia Stock Corporation Act. This ground of Demurrer is overruled. The defendants misinterpret the law in their argument. Ms. Hu's claim has nothing to do with challenges to *ultra vires* corporate acts under § 13.1-629(B). Count I is not one of the actions described in that statute. Contrary to defendants argument, § 13.1-627(A)(1) gives every Virginia stock corporation the same powers as an individual, including specifically, "to sue and be sued, complain, and defend in its corporate name."

*(4) Section 55-58.1(3) bars the claim*

The defendants' fourth ground for Demurrer to Count I is that Ms. Hu's claim is barred by § 55-58.1(3). This ground of Demurrer is overruled. Section 55-58.1(3) directs that no clerk shall admit a deed of trust of record that does not state the full residence or business address of any trustee named therein, including street address and zip code. It also includes the following savings clause: "Notwithstanding any other provisions of this section, if any security trust is admitted by a clerk for recordation, it shall be conclusively presumed that such security trust complies with all the requirements in this section." (A conclusive presumption of law is generally defined as an inference which must be drawn from proof of a given fact or facts which no evidence, however strong, or any argument or consideration, will be permitted to overcome, as distinguished from a mere presumption, which is a state of facts treated as probably true, but which may be rebutted or overcome with opposing or contradictory evidence. *Miller v. Commonwealth*, 172 Va. 639, 2 S.E.2d 343 (1939).) The defendants argue that this section precludes a collateral attack on the validity of any security instrument once it has been admitted of record by the Clerk. The conclusive presumption language, however, must be limited to validating the correctness of the residence or business address of the trustee as it appears in the deed of trust. Were it to apply to all the rest of § 55-58.1 it would completely obviate and render meaningless the residency requirements for trustees in part (2). This would be contrary to the rule of construction that, whenever possible, the several parts of a statute should be interpreted as a consistent and harmonious whole as to effectuate the legislative goal. *VEPCO v. Board of Sup'rs*, 226 Va. 382, 309 S.E.2d 308 (1983).

B. *Demurrer to Count II (Grounds (a) and (b))*

(1) *Demurrer upon the same grounds set forth in the Demurrer to Count I*

The defendants demur to Count II on the same grounds as in Count I. The Court has already overruled all the grounds of Demurrer to Count I, ruling that the Trustee's actions at foreclosure are voidable.

(2) *The claim of CorpServe's lack of capacity to act goes beyond the Court's leave to amend Count I in the original Complaint*

The defendants also argue as a ground of Demurrer to Count II that Ms. Hu's allegation that CorpServe lacked capacity to enter into a contract is different from the grounds stated in the Court's leave to amend in its Order entered July 19, 2012. This ground of Demurrer is overruled. The allegation

of lack of capacity of CorpServe could just as well have been stated within Count I as its lack of authority. If the law of Virginia does not provide authority for CorpServe to be named or act as a corporate trustee because it did not have a principal office in the Commonwealth of Virginia, then it would also, the Court finds, lack capacity to act as a trustee in executing a memorandum of sale. The point Ms. Hu makes in her argument is that CorpServe's lack of authority is tantamount to lack of capacity to execute the Memo. Under the scope of the leave this Court gave to amend, within the ambit of authority, is the capacity or ability to enter into a contract.

## C. *Demurrer to Count III*

The defendants demur to Count III on the grounds that requiring a buyer's premium violates § 55-59.4 and renders the Memo void. Count III in the Amended Complaint is identical to Count II in the Complaint. In its June 12, 2012, opinion letter, the Court overruled the Demurrer to this Count upon a finding that there is no *per se* prohibition to a buyer's premium under § 55-59.4. Since the Court did not sustain the Demurrer to Count II of the Complaint, the now repleaded Count III is not demurrable. However, based on the Court's existing findings, it must be understood that the Memo could, for example, still be declared invalid if the imposition of a buyer's premium was unannounced before the auction or the Commissioner of Accounts of this Court found that the 5% buyer's premium was not applied as a legitimate expense of foreclosure.

## D. *Demurrer to Count IV*

The defendants demur to Count IV on the grounds that Ms. Hu does not have standing to complain about the application of the forfeited deposit. This ground of Demurrer will be sustained. Ms. Hu files this suit to set aside her contract with CorpServe. As the Memo expressly provides, the relief she seeks is the refund of her deposit which was forfeited when she failed to close within 45 days, the term set by the Memo. She complains that § 55-59.4(A)(2) directs that a forfeited deposit "be applied to pay the costs and expense of sale and the balance, if any, to be retained by the trustee as his compensation in connection with that sale," but that the Memo she signed changed this statutory scheme of distribution because it directed that a forfeited deposit "be applied to the costs and expenses of the foreclosure sale and then to the balance due under the Note."

Pursuant to its June 12, 2012, opinion letter, the Court in its July 19, 2012, Order sustained the defendants' Demurrer to Count III with leave granted to Ms. Hu to file an amended count specifying imposition of any personal detriment or prejudice to her relating to the redirection of payment of the net balance of her deposit as provided in the Memo. Ms. Hu, in Count IV, fails to allege any detriment or prejudice to herself for signing an

agreement which varied the application of her forfeited deposit from that provided in Va. Code § 55-59.4(A)(2). Ms. Hu is not a party to the Deed of Trust, only a party to the Memo seeking the sole remedy to which she is contractually entitled upon default by the Trustee, the refund of her deposit.

### Summary

Upon consideration of the foregoing, the Court for the reasons stated herein:

(1) Overrules the Demurrer to Count I, the Court having found that the actions of the defendants render the Trustee's auction and the Memo executed pursuant thereto voidable;

(2) Overrules the Demurrer to Count II;

(3) Overrules the Demurrer to Count III, Count III is not demurrable because this Court overruled the Demurrer to this same Count when it was pleaded as Count II in the original Complaint; and

(4) Sustains the Demurrer to Count IV.

### August 5, 2013

This letter addresses cross-motions for summary judgment in an ongoing litigation wherein the plaintiff Jingli Hu seeks to recover the $275,000 deposit she paid to CorpServe, Inc., Substitute Trustee, as the high bidder at the foreclosure auction of property known as Coles Point Plantation under a Deed of Trust securing payment of an indebtedness to the defendant Premier Bank.

### Prior Proceedings

On March 28, 2013, the Court entered an Order overruling the defendants' Demurrers to Counts I, II, and III and sustaining defendants' Demurrer to Count IV of the plaintiff's Amended Complaint for the reasons set forth in the Court's opinion letter dated February 26, 2013. In Count I, Ms. Hu seeks to have the Memo of Sale that she signed with CorpServe declared void and unenforceable because CorpServe was named and acted as Trustee in violation of Va. Code § 55-58.1(2) and, similarly, in Count II to have the Memo of Sale declared void and unenforceable because CorpServe lacked capacity to perform any act as trustee including entering into the Memo of Sale and conveying the subject property. In the March 28, 2013, Order, the Court found that the actions of the defendants rendered the trustee's auction and the Memo executed pursuant thereto voidable. On April 17, 2013, the defendants filed their Answer and Grounds of Defense to the Amended Complaint. On May 29, 2013, Ms. Hu, pursuant to Rule 3:20, filed a Motion for Summary Judgment. The defendants on June 3, 2013, filed a written Opposition and Cross-Motion for Summary Judgment,

and, on July 1, 2013, Ms. Hu filed a Response to Defendants' Opposition and Cross-Motion.

The defendants' Cross-Motion seeks summary judgment that Ms. Hu cannot recover her deposit under the Memo of Sale because she defaulted under the contract by not closing on the purchase of the subject property by the date provided in the Memo of Sale. The parties conducted discovery by way of interrogatories and requests for admissions. The Court reviewed all the above and heard counsels' oral arguments on the Motions on July 8, 2013.

### Standard of Summary Judgment

Under Rule 3:20, any party may make a motion for summary judgment at any time after the parties are at issue. If it appears from the pleadings, the orders, if any, made at a pre-trial conference, the admissions, if any, in the proceedings, or, upon sustaining a motion to strike the evidence, that the moving party is entitled to judgment, the court shall enter judgment in that party's favor. Summary judgment shall not be entered if any material fact is genuinely in dispute.

### Facts Not Disputed

Having considered the pleadings, answers to interrogatories, and responses to requests for admissions made through discovery and the written and oral arguments of counsel, the Court finds that the following material facts are not contested:

(1) That CorpServe, Inc., a Virginia corporation, did not at any time material to this case have its principal office within the Commonwealth of Virginia;

(a) That, specifically, CorpServe, Inc., did not have its principal office within the Commonwealth at the time of the execution and recordation of the Deed of Appointment which named it as the Substitute Trustee;

(b) That, specifically, CorpServe, Inc., did not have its principal office within the Commonwealth at the time it conducted the foreclosure on the subject property and executed the Memo of Sale with Ms. Hu;

(2) That, at all times material hereto, CorpServe, Inc., maintained its principal office in the State of Maryland, not within the Commonwealth of Virginia;

(3) That CorpServe knew when it was named as Substitute Trustee and entered into the Memo of Sale with Ms. Hu that its principal office was not within the Commonwealth of Virginia.

### Analysis

The naming of CorpServe as Substitute Trustee in the Deed of Appointment and all acts by CorpServe undertaken as Substitute Trustee, including the execution of the Memo of Sale with Ms. Hu, violated the

provision in Va. Code § 55-58.1(2) that no Virginia chartered corporation may be named or act as trustee unless its principal office is within the Commonwealth of Virginia.

Virginia law recognizes a distinction between contracts that are illegal and those merely invalid. "An illegal contract has been defined as an agreement with an unlawful object. It is not merely lacking in valid subject-matter, but its purpose is positively invalid." *American-LaFrance & Foamite v. Arlington County*, 169 Va. 1,9, 192 S.E. 758 (1937). An illegal contract is characterized as *malum in se*, that is one which is for an immoral purpose or for which statutory punishment is provided in which both parties have knowingly joined. The General Assembly can prohibit the formation of any bargain and thereby make it illegal. The question of whether the General Assembly has done so depends on the interpretation of the legislative action. *Colbert v. Ashland Const. Co.*, 176 Va. 500, 11 S.E.2d 612 (1940). If the parties are found to be *in pari delicto* in an illegal contract, the court will not come to the relief of either party, but will leave them where they are.

If the contract is found to be merely invalid, involving no moral turpitude, but "simply contrary to some legal provision relating to the manner, method, or terms of its performance, with no penalty provided other than its invalidity, the Court will not require performance of either the express contract or a contract by implication." American-LaFrance, 169 Va. at 9. Such agreements are deemed *malum prohibitum*. In such cases, courts may undertake restoration of the *status quo* of the parties where doing so does no injustice to either party. In so doing, the Court strives to promote a just and honest result without giving recognition to the contract.

It is neither alleged nor argued in our case that fraud or bad faith was involved in the foreclosure or the execution of the Memo of Sale. There was no immoral purpose or object in Ms. Hu and CorpServe entering into the Memo of Sale, nor has the General Assembly imposed here any statutory punishment other than to render the agreement of the parties invalid as the result of CorpServe's having neither the capacity nor the authority to be named or act as Substitute Trustee.

It has been argued to the Court that Ms. Hu is the party at fault because she breached the Memo of Sale by not closing and that the deposit she forfeited according to the terms of the agreement should be retained by Premier Bank as the innocent party. Although Premier Bank was not a party to the Memo of Sale, this argument overlooks several points. First, it was Premier Bank that appointed CorpServe as Substitute Trustee when CorpServe, by Statute, was prohibited from being named or acting in such capacity. CorpServe was appointed Substitute Trustee by Adams Bank; however, Mr. Aronson acknowledged at oral argument that Adams Bank by merger became Premier Bank. If Ms. Hu, because she attended the foreclosure auction, heard pre-bid announcements, bid on the property, signed the Memo of Sale, posted

a deposit as the high bidder, and subsequently defaulted on the purchase, is to be held responsible for not knowing at the time that CorpServe had no authority or capacity to act, then, certainly, Premier Bank, as a financial institution, must be held responsible for having to know it could not name or have CorpServe act as Substitute Trustee. Second, regardless of whether the Memo of Sale is *malum in se* or *malum prohibitum*, the contract is void, and the Court will not enforce its terms. The breach of terms in a void and unenforceable agreement does not signify fault. There was sufficient publicly available information, including the records of the Virginia State Corporation Commission, for anyone to have determined that CorpServe did not have its principal office within the Commonwealth of Virginia.

In its prior opinion letter, the Court considered the cases of *Virginia Housing Dev. Auth. v. Fox Run, Ltd. Partnership*, 255 Va. 356, 497 S.E.2d 747 (1998), and *Fralin v. Aronovitch*, 247 F.2d 468 (4th Cir. 1957), argued by defendants. The Court again rejects defendants' arguments that, under the holdings of these cases, CorpServe's actions should not be held invalid because it acted in substantial compliance with the applicable provisions of Va. Code § 55-58.1(2) or because the noncompliance raised by the plaintiff constitutes nothing more than a mere technical violation of the law.

As to the parties in this case, the Court finds that the Memo of Sale was *malum prohibitum*. The plaintiff Ms. Hu and the defendants Premier Bank and CorpServe were *in pari delicto* with respect to such document. The Memo of Sale is void, and its provisions are unenforceable by either party.

## Conclusions

Upon consideration of the foregoing:

(1) The defendants' Cross-Motion for Summary Judgment is overruled;

(2) The plaintiff's Motion for Summary Judgment is sustained in part; the Memo of Sale is void and unenforceable because CorpServe lacked both the capacity or authority to be named or act as Substitute Trustee under the provisions of Va. Code § 55-58.1(2);

(3) Based upon finding that the provisions of the Memo of Sale are void and unenforceable, but recognizing that the Court may under proper circumstances restore the *status quo* of the parties, the Court defers determination of what other relief should be afforded Ms. Hu until this case is heard at trial.

### January 24, 2014

In this case, the plaintiff Jingli Hu seeks the recovery of a $275,000 deposit she made as the highest bidder at a foreclosure sale on Coles Point Plantation, a marina campground located in Westmoreland County, Virginia.

This Court, following the issuance of its opinion letter dated August 5, 2013, entered an Order dated September 5, 2013, which overruled the

defendants' Cross-Motion for Summary Judgment and sustained in part the plaintiff's Motion for Summary Judgment finding that the Memo of Sale dated November 17, 2011 ("the Memo") entered into between Ms. Hu and the defendant CorpServe, Inc., Substitute Trustee, to be void and unenforceable because CorpServe lacked both the capacity and authority to be named or act as substitute trustee under the provisions of Va. Code § 55-58.1(2). This ruling left for determination only the issue of what relief, if any, should be afforded the plaintiff Ms. Hu.

At a two hour evidentiary hearing in this case on January 16, 2014, the Court heard the sworn testimony of Ms. Hu and Charles Burke, a banker and a member of Blackbeard Pond, L.L.C., the entity which, as the second highest bidder, ultimately bought the Property at the foreclosure sale conducted by CorpServe. Blackbeard Pond, L.L.C., is a defendant in a separate suit seeking to void its purchase of the property at the foreclosure sale conducted by CorpServe. The Court also admitted as plaintiff's and defendants' joint exhibit 1 a written list of 49 stipulations with nine exhibits attached. Finally, the Court listened to an audio disc recording of the November 17, 2011, foreclosure auction.

The Court follows the analysis of *American-LaFrance & Foamite v. Arlington Co.*, 169 Va. 1, 192 S.E. 758 (1937), in determining what relief Ms. Hu is entitled to in the present case. As this Court has already determined, the Memo of Sale cannot be characterized as *malum in se,* because the Memo was not undertaken for any immoral purpose nor has any statutory punishment been prescribed by the General Assembly for the parties having entered into the Memo. Rather the Memo must be deemed *malum prohibitum,* that is invalid and of no force or effect because, contrary to Va. Code § 55-58.1(2), CorpServe did not have its principal office in Virginia. The Memo is thus "utterly void and dead," and no party to this suit has the right to enforce or rely upon its provisions nor may any contract be implied from it by law. Given this posture, the Court nevertheless should "not decline[] to undertake to restore the *status quo* of the parties where, in doing so, no injustice is done to either party. The effort of the Court is to promote justice and honesty without giving recognition to the contract." *Id.,* 169 Va., at 9.

In clarification of what this Court stated in its prior opinion letter, the deed of trust lender Premier Bank and Ms. Hu are *in pari delicto* in the sense that each must be charged with knowledge of the law and each had available to it public information from the records of the Virginia State Corporation Commission that CorpServe did not have its principal office within the Commonwealth of Virginia. The party most guilty or at fault in this case is CorpServe because it held itself out as having the authority and capacity to be named and to act as a corporate trustee in a deed of trust foreclosure in Virginia. The responsibility of properly carrying out the foreclosure in accordance with the law of Virginia rested upon CorpServe.

Although Premier Bank and Ms. Hu each may be faulted for not ascertaining the location of the principal office of the acting substitute trustee, Premier Bank had a years long ongoing relationship with CorpServe. Through its predecessor organization, the Adams National Bank, Premier Bank named CorpServe to act as substitute trustee in the Deed of Appointment of Substitute Trustee dated October 23, 2008, recorded in the Clerk's Office of this Court on October 28, 2008, in Deed Book 792 at Page 1159. (Stipulation Exhibit 9.) Premier Bank, as a financial institution, possessed substantial knowledge and opportunity to ascertain the legal standing of CorpServe to be named and to act as substitute trustee in the foreclosure of the deed of trust securing its own loan. The same level of fault cannot be placed upon Ms. Hu who, like other bidders, on short notice attended and participated in the foreclosure sale in response to the advertised Notice of Sale, which was also read by the auctioneer with other announcements just prior to the auction.

In this suit, there are no allegations of fraud or bad faith relating to the Memo. The defendants have argued Ms. Hu is solely or primarily at fault for the default of her deposit because she failed to close the purchase within the 45 days provided in the Memo. In the Court's opinion, this contention must be rejected because the Memo is void. Although Premier Bank is not a party to the Memo, CorpServe paid Ms. Hu's entire $275,000 deposit to Premier Bank which currently holds such funds based solely upon its claim to the $275,000 deposit. (Stipulation No. 28 and Stipulation Exhibits 6 and 7.) The Court believes that, if Premier Bank were permitted to retain the deposit CorpServe obtained under the void Memo, it would discourage bidding at deed of trust foreclosures. The claim of a right to retain a deposit forfeited pursuant to an invalid agreement should not prevail. The obligation to do justice under the facts in this case requires the Court to order the deposit be refunded to Ms. Hu by the defendants CorpServe and Premier Bank.

In summary, the plaintiff shall have judgment against the defendants in this case for $275,000 together with interest thereon from the date of judgment and costs.